**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ALAN N. SCOTT,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:03-0651** |
| **v.** | : | **(CAPUTO, D.J.)** |
| | | **(MANNION, M.J.)** |
| **U.S. DEPARTMENT OF** | : | |
| **JUSTICE, U.S. BUREAU OF** | | |
| **PRISONS, U.S. MARSHALS** | : | |
| **SERVICE, EXECUTIVE OFFICE** | | |
| **OF U.S. ATTORNEYS and** | : | |
| **OFFICE OF THE SOLICITOR** | | |
| **GENERAL,** | : | |
| **Defendant** | : | |

## REPORT AND RECOMMENDATION

Pending before the court is the defendants' motion for summary judgment. (Doc. No. 20).

By way of relevant background, on April 17, 2003, the plaintiff filed the instant action pursuant to the Freedom of Information Act, ("FOIA"), 5 U.S.C. § 552, to obtain copies of documents which he believes are in the possession of the Bureau of Prisons, ("BOP"), the Executive Office of the United States Attorney, ("EOUSA"), the United States Marshals Service, ("USMS"), and the Office of the Solicitor General[1]. (Doc. No. 1). The filing fee having been paid, by order dated April 28, 2003, it was directed that process issue. (Doc. No.

_____

[1]In his brief in opposition to the defendants' motion for summary judgment, the plaintiff admits that his claims against the Office of the Solicitor General are moot. (Doc. No. 26, p. 6). Therefore, the plaintiff's complaint should be dismissed with respect to this defendant.

4).

After having been granted an extension of time to do so, (Doc. No. 9), on August 15, 2003, the defendants filed an answer to the complaint, (Doc. No. 12).

By order dated March 9, 2004, it was directed that any dispositive motions in this case be filed within sixty days of the date of the order and, if no such motions were filed, it would be recommended that the case be set down for trial.  (Doc. No. 14).  By order dated May 11, 2004, the dispositive motion deadline was extended until August 9, 2004.  (Doc. No. 17).

On July 29, 2004, the defendants filed the instant motion for summary judgment, (Doc. No. 20), along with a supporting brief, (Doc. No. 21), a statement of material facts, (Doc. No. 22), and supporting exhibits, (Doc. No. 23).  After having been granted an extension of time to do so, (Doc. No. 25), on September 15, 2004, the plaintiff filed a brief in opposition to the defendants' motion for summary judgment, (Doc. No. 26).

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The Supreme Court has stated that:

> ". . . [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails

> to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact.  Id.  The moving party can discharge that burden by "showing . . . that there is an absence of evidence to support the nonmoving party's case."  Id. at 325.

Issues of fact are genuine "only if a reasonably jury, considering the evidence presented, could find for the nonmoving party."  Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988)(citations omitted).  Material facts are those which will effect the outcome of the trial under governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The court may not weigh the evidence or make credibility determinations.  Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998).  In determining whether an issue of material fact exists, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the nonmoving party.  Id. at 393.

If the moving party meets his initial burden, the opposing party must do more than raise some metaphysical doubt as to material facts, but must show sufficient evidence to support a jury verdict in its favor.  Id.

Summary judgment is typically used to adjudicate FOIA cases.  Manna v. U.S. Dept. of Justice, 832 F.Supp. 866, 870 (D.N.J. 1993), aff'd 51 F.3d 1158 (3d Cir. 1995), (citing Struth v. F.B.I., 673 F.Supp. 949, 953 (E.D.Wis.1987)).  Moreover, a district court may award summary judgment on the basis of agency affidavits alone where the affidavits are sufficiently detailed and are submitted in good faith.  Id. (citing Simmons v. United States Dep't of Justice, 796 F.2d 709, 711-12 (4th Cir.1986)).

The FOIA provides citizens access to government information, thereby insuring an informed citizenry, and "was enacted in furtherance of the belief that 'an informed electorate is vital to the proper operation of a democracy.'" Id. (citing N.L.R.B. v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978), and quoting Coastal States Gas Corp. v. Department of Energy, 644 F.2d 969, 974 (3d Cir.1981)).

Under the FOIA, a government agency must promptly release agency documents, upon request, subject to nine specific statutory exemptions.  Id. These statutory exemptions are exclusive and must be narrowly construed. Id. (citing Department of Air Force v. Rose, 425 U.S. 352, 361(1976)). Moreover, an entire document is not exempt from release merely because a portion is exempt. Id. (citing Vaughn v. Rosen, 484 F.2d 820, 825

4

(D.C.Cir.1973), cert. denied, 415 U.S. 977 (1974)).   "Any reasonably segregable, non-exempt portion of a record is to be made available to the person requesting that record." Id. (quoting Lame v. United States Dep't of Justice, 654 F.2d 917, 921 (3d Cir.1981)).

If the agency fails to release the requested information, and all administrative remedies have been exhausted, the individual seeking the information can obtain review of the agency's denial in federal district court. Id. (citing Lame, 654 F.2d at 921).   The court must review the agency's decision to withhold requested documents de novo, and the burden is on the agency to justify its action.   Id. (citing 5 U.S.C. §§ 552(a)(4)(B); Lame, 654 F.2d at 921).

With respect to the instant action, the plaintiff initially claims:

> 4.  On February 8, 2002 plaintiff filed an FOIA request with the defendant U.S. Marshals Service seeking to determine the current facility of incarceration for non-protected defendant Derek Capozzi who was then awaiting trial in the District of Massachusetts.  That FOIA request (2002USMS3517) was denied on March 14, 2002 and the administrative appeal (#02-2266) was denied by the Office of Information & Privacy on September 16, 2002.
>
> The institutional location of a convicted federal inmate is not properly withheld from disclosure in the absence of being a WITSEC inmate which Mr. Capozzi most assuredly is not.

(Doc. No. 1, p. 2).

In response to the plaintiff's complaint, the defendants have provided

5

the declaration of Sharron L. Keys, the FOIA/Privacy Act, ("PA"), Specialist of the USMS. (Doc. No. 23, Ex. D). This declaration provides that the plaintiff submitted a request letter to the USMS Headquarters dated February 8, 2002, and received in the Office of General Counsel on March 12, 2002, requesting information relating to inmate Derek Capozzi. (Id. at ¶ 2). By correspondence dated March 14, 2002, the plaintiff was informed that his request was denied pursuant to 5 U.S.C. § 552(b)(7)(C).  (Id. at ¶ 3).  The plaintiff filed an administrative appeal dated May 21, 2002, to the Department of Justice, Office of Information and Privacy, ("OIP"). (Id. at ¶ 4). Receipt of the plaintiff's appeal was acknowledged, and by letter dated June 10, 2002, the OIP affirmed the action of the USMS and advised the plaintiff of his right to seek judicial review.  (Id. at ¶¶ 5-6).

In the instant motion for summary judgment, the  defendants maintain that the information sought by the plaintiff regarding inmate Derek Capozzi is exempt under § 552(b)(7)(C).  As set forth above, under the FOIA, a government agency must promptly release agency documents, upon request, subject to nine specific statutory exemptions.  Manna, 832 F.Supp. at 870. These statutory exemptions are exclusive and must be narrowly construed. Id. (citing Department of Air Force v. Rose, 425 U.S. 352, 361(1976)).

Section 552(b)(7)(C), the exemption asserted here, protects from disclosure information compiled for law enforcement purposes that "could reasonably be expected to constitute an unwarranted invasion of personal

privacy."  Courts determine the validity of this exemption by conducting a "de novo balancing test, weighing the privacy interest and the extent to which it is invaded on the one hand, against the public benefit that would result from disclosure, on the other."  Davin v. U.S. Dep't of Justice, 60 F.3d 1043, 1058 (3d Cir. 1995) (internal citations and quotations omitted).  The government utilizes this exemption to protect six categories of information from disclosure, including names of Federal Bureau of Investigation ("FBI"), special agents, names and/or identifying information concerning third parties interviewed by the FBI, names and/or identifying information concerning third parties of investigative interest, names of local law enforcement officers, names and/or identifying information concerning third parties mentioned, and names of naval officers.  The government may properly withhold from disclosure the names and/or identifying information of suspects and non-suspects because the privacy interests of these individuals outweigh the public interest in disclosure of this sensitive information.  See Amro v. U.S. Customs Service, 128 F.Supp.2d 776, 787-88 (E.D.Pa. 2001).  The privacy interests of third parties, such as suspects, interviewees, and witnesses, rest on the recognition that "disclosure may result in embarrassment or harassment."  Davin, 60 F.3d at 1058.  The privacy interest of a third party "may become diluted by the passage of time."  Id.  However, "[p]assage of time alone is not enough to erase this privacy interest."  Manna v. United States Dep't of Justice, 51 F.3d 1158, 1166 (3d Cir. 1995).

7

Here, the defendants' materials provide that the information relating to inmate Capozzi was compiled at the time he came into the custody of the USMS in connection with his federal prosecution.  (Doc. No. 23, Ex. D, ¶ 10).  Therefore, there is no question that the information was compiled for law enforcement purposes.

The defendants' materials further indicate that release of the information concerning inmate Capozzi could subject him to undue public scrutiny and might result in harassment or pose a risk to his physical safety.  The materials further provide that the release of such information could present other security concerns such as the risk of gang-related violence within the facility where inmate Capozzi is being housed.  (Doc. No. 23, Ex. D, ¶ 11).

Against this privacy interest we must balance "the public interests, if any, that would be served by disclosure." Manna, 51 F.3d at 1165 (citing United States Dep't of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 762 (1989)).  Here, the plaintiff has failed to set forth any public interest in the disclosure of the current location of inmate Capozzi.  Moreover, such information would shed little light "'on an agency's performance of its statutory duties,'" the basis of the FOIA.  Davin, 60 F.3d at 1059 (quoting Reporters Committee, 489 U.S. at 773).

Given the above, the court finds that the balance of interests tips in favor of the government's withholding of the location of inmate Capozzi and that such withholding was proper under exemption § 552(b)(7)(C).  On this basis,

the defendants' motion for summary judgment should be granted.

With respect to his claims against the BOP, in his opposing brief, the plaintiff adopts the "sequence and identification of issues" set forth by the defendants in their supporting brief which are as follows:

> Plaintiff indicates that the Federal Bureau of Prisons has successfully complied with some of his requests, however, the BOP has failed to locate his previous incarceration file. Plaintiff claims the BOP advised him that they cannot locate his previous incarceration file. Plaintiff further claims an inadequate search was conducted for these missing files and the BOP has failed to provide him with other requested records. Plaintiff requests full and complete disclosure of the records sought, assessment of all proper costs against the defendant agencies, and any such further relief as may be just and proper.

> Plaintiff has two BOP Federal Register Numbers, 08238-076 (old law register number) and 17472-038 (C[omprehensive] C[rime] C[ontrol] A[ct] New Law register number). Plaintiff has a long incarceration history with the BOP, including multiple sentences and three BOP files. The following is a brief description of Plaintiff's old law and new law sentences that are maintained in the BOP computerized system, hereinafter referred to as the "Sentry" system.

> Old Law Sentences:

> Plaintiff was sentenced on five occasions by either the Northern District of Alabama or the Western District of Tennessee, under Federal Register Number 08238-076, for Income Tax Evasion and Making False Claims Against the United States, between 1980 and 1984, to aggregated terms of incarceration of 8 years. Plaintiff was paroled from the Federal Correctional Institution (FCI) Otisville, New York on June 14, 1985. Plaintiff's Old Law files were then sent to the National Archives for retention. However, Plaintiff was sentenced by the Northern District of Alabama to a term of 8 years for a Parole Violation and his files were retrieved from the National Archives by FCI Otisville staff, upon his arrival at FCI Otisville in 1987. Plaintiff was released from FCI Otisville on May 16, 1988 via Mandatory Release and

9

FCI Otisville staff again sent his Old Law files to the National Archives for retention.

Prior CCCA New Law Sentences:

Plaintiff was sentenced by the District of Massachusetts on September 28, 1993 to a 39 month term of confinement for making False Statements.  Plaintiff was housed at the Federal Prison Camp (FPC) Allenwood, in Montgomery, Pennsylvania. Plaintiff was released from FPC Allenwood on 7/26/1995 via Good Conduct Time Release with a term of supervision to follow. Plaintiff's Federal Register Number for this CCCA New Law Sentence was 17472-038.  FPC Allenwood staff sent this file (CCCA New Law File) to the National Archives for retention.

Plaintiff violated his Supervised Release and received a 24 Month sentence.  Upon arrival at FPC Allenwood in 1995, staff retrieved his previous CCCA New Law file from the National Archives.  Plaintiff was again released from FPC Allenwood on March 14, 1997, via Good Conduct Time Release.   FPC Allenwood sent his CCCA New Law File to the National Archives for retention.

Current CCCA New Law Sentences:

Plaintiff is currently serving 96 month term of confinement imposed by the District of Massachusetts for Conspiracy to make false statements and False Claims against the United States, and a concurrent 96 month term for Bank Fraud and Possession of Forged Securities.  Plaintiff's has a third (current CCCA New Law File) BOP file that is currently maintained at the FCI Schuylkill, in Minersville, Pennsylvania.  Plaintiff is currently housed at the Federal Correctional Institution (FCI) Schuylkill, in Minersville, Pennsylvania, and has a projected release date of March 16, 2006.

In an effort to clarify Plaintiff's claims against the BOP, his claims for the alleged lost (Old Law File and CCCA New Law File) files and the BOP searches for these files will be referred to as **Issue A: 1** (FOIA Request No. 2001-3970) Plaintiff's Old Law File and **Issue A: 2** (FOIA Request Nos. 2002-8306, 2002-9124 and 2003 2756) Plaintiff's CCCA New Law File.  His claim that BOP did not perform an adequate search will be referred to as **Issue**

**B**; (FOIA Request Nos. 2002-4362 & 2002-9124).

Issue A: 1

Plaintiff alleges that on December 29, 2000, he made a request to the BOP (FOIA Request No. 2001-3970) for a copy of any documentation pertaining to his participation in the Drug Abuse Program (DAP Program) at the Federal Correctional Institution (FCI) Talladega and FCI Tallahassee from 1982 to 1985.  Plaintiff contends that on September 6, 2001, he amended his request to include a copy of any and all incident reports and memoranda prepared by staff at FCI Talladega during the same time frame.

Issue A: 2

Plaintiff indicates that he submitted a FOIA request (FOIA Request Numbers 2002-8306 & 2002-9124) on August 9, 2002, for any records and documents supporting the "prior custody" credits on computation 060 (federal docket no. 89-CR-234-JLT) including but not limited to the state "court mittimus's," state court orders, sentence computations, BOP memoranda, any such notes, phone notes, and any other records that were compiled in conjunction with prior time credits during the period of 1990 to 1996.

Plaintiff claims that he filed a FOIA Request (FOIA Request No. 2003-2756) on January 14, 2003, for a copy of all "Telephone Number Request Inmate" (Form BP505(52)), for the period of May 1994 to February 1997, that are contained in his Central File at the Federal Prison Camp (FPC) Allenwood, in Montgomery, Pennsylvania.

Issue B:

Plaintiff claims that on March 15, 2002, he filed another FOIA request (FOIA Request Numbers 2002-4362 & 2002-6182) for a copy of the Special Housing Unit (SHU) review log and sheets pertaining to himself for the period of May 17, 2001 through June 21, 2001.  Plaintiff further requested a copy of any SIS office records that pertain to the seizure of his FAR/ARM Guide and Auto Rotate Journal on or about May 23, 2001, by Senior Officer Specialist (SOS) Kenneth Duby at F[ederal]

M[edical] C[enter] Devens.

Plaintiff claims Issue A1 & 2, were not properly processed because the BOP could not locate his previous Old Law File (archived by FCI Otisville staff) and CCCA New Law File (archived by FPC Allenwood staff). He claims the BOP provided no explanation reflecting the efforts to locate the files, or explain why the BOP has failed to comply with its own document and file retention policy. Regarding Issue B, Plaintiff claims that the BOP has not conducted adequate searches to find information regarding his request for Special Housing Unit (SHU) reviews, "log sheets" and confiscated materials. Plaintiff contends that he has successfully exhausted his administrative remedies.

(Doc. No. 21, pp. 1-5).

In response to the plaintiff's claims, the defendants have submitted documentation which establishes that, with respect to Issue A: 1, on February 23, 2001, the Office of General Counsel received a request from the plaintiff under the FOIA/PA for a copy of any and all documents that were generated while he was housed at FCI Talladega and FCI Tallahassee from 1982 to 1985, regarding his placement in the drug abuse program, (i.e., Request Number 2001-3970). This request was forwarded to the Northeastern Regional Office, ("NERO"), of the BOP for processing. A search request was then forwarded to staff at FMC Devens, in Ayers, Massachusetts, as the plaintiff was housed there at the time of his initial request. FMC Devens staff contacted FCI Otisville to have the plaintiff's Old Law file retrieved from the National Archives. (Doc. No. 23, Ex. B, ¶ 4). On March 28, 2001, the plaintiff was advised that his records were requested from the National Archives and that, upon receipt, his request would be processed. (Doc. No. 23, Ex. A, ¶ 5).

12

In September 2001, the plaintiff amended his request to include a copy of any and all disciplinary records that are maintained in his Old Law file.  This request was also forwarded to FMC Devens.  (Id., ¶ 6).

The plaintiff's Old Law file was forwarded to FMC Devens in December 2001.  However, prior to copying the responsive records, a new staff member at FMC Devens inadvertently sent the file out of the institution without proper tracking.  (Doc. No. 23, Ex. B, ¶ 6).  The plaintiff was subsequently advised that the file could not be located.  However, in the course of responding to the instant action, the file was located at the National Archives.  (Doc. No. 23, Ex. A, ¶ 6; Ex. B, ¶ 8).  On August 12, 2003, the plaintiff was provided twenty-one pages of material responsive to his original and requests.  (Doc. No. 23, Ex. A, ¶ 6).

With respect to Issue A: 2, the defendants' materials establish that the plaintiff filed three FOIA requests requesting information that is maintained in his prior CCCA New Law file that was forwarded to the National Archives by staff at FPC Allenwood.  These requests were assigned FOIA Request Numbers 2002-8306, 2002-9124, and 2003-2756.  At the time the plaintiff filed these requests, he was housed at the FMC Devens.  Records from FPC Allenwood indicate that the plaintiff's archived CCCA New Law file was mailed to FMC Devens by staff at the National Archives in December 2001. However, records from FMC Devens do not indicate that the plaintiff's file was ever received at FMC Devens.  (Doc. No. 23, Ex. A, ¶ 7).

On August 8, 2003, documentation was forwarded from the National Archives which indicates that their most recent search revealed that the plaintiff's prior CCCA New Law file is not currently at the National Archives. (Id. at ¶ 8).  Moreover, in preparing a response to the instant action, staff at FMC Devens conducted a further search of all institutional files for the plaintiff's prior CCCA New Law file, but could not locate the file.  (Id. at ¶ 9). Furthermore, staff at FCI Schuylkill were requested to conduct a search of the plaintiff's current CCCA New Law file that is being maintained at that facility to determine whether the plaintiff's prior CCCA New Law file had been inadvertently incorporated into his current file.  That search did not unearth the plaintiff's prior CCCA New Law file.  (Id. at ¶ 10).

With respect to Issue B, on April 4, 2002, the plaintiff submitted a request for a copy of all SENTRY information, transfer information, disciplinary records, confiscation documents, Special Housing Unit, ("SHU"), documents, including his progress reports and Inmate Personal Property Records from FMC Devens and FCI Schuylkill.  This request was given FOIA Request Number 2002-4362.  In response to this request, on May 22, 2002, the plaintiff was provided 153 pages of records.  The plaintiff was advised that some of the records he is seeking are maintained in the releasable portion of his Central File and, in accordance with BOP Policy 1351.04, Release of Information, he could review the releasable portion of his file by contacting staff at FCI Schuylkill to make arrangements for local review and copying.  (Id.

at ¶ 11).

An amended request was filed by the plaintiff on May 31, 2002, in which he indicated that certain information was not provided in response to FOIA Request Number 2002-4362.  The subsequent request was assigned FOIA Request Number 2002-6182.   In this request, the plaintiff claimed that numerous documents were not provided, including a Form "EMS-409" relating to disciplinary transfer; CIM Clearance and Separatee Data; "BOP 402" prepared by Mr. Duby at FMC Devens on or about May 23, 2001; documents regarding the confiscation of his books/magazines; FMC Devens SHU contraband logbook entries on or about May 23, 2001; and the SHU review and "log sheets" pertaining to plaintiff from May 17, 2001, through June 21, 2001.  The plaintiff further indicated that the archived records previously requested still had not been provided.  (Id. at ¶ 12).

The plaintiff was advised that the 153 pages previously forwarded to him were found responsive to his general request.  However, another search was performed regarding the specific records requested and seven additional pages were found responsive.  These documents were forwarded to NERO for processing.  Four pages were released to the plaintiff in full and three pages were released with excisions.  (Id. at ¶ 13).

In the course of responding to the instant action, staff at FMC Devens found additional documents responsive to the plaintiff's request.  Specifically, the Confiscation Form that was drafted by SOS Duby and the Confiscation

logs.  On August 12, 2003, the plaintiff was provided with three additional pages – one in its entirety and two which had excisions.  (Id. at ¶ 14).

In considering a challenge to the adequacy of a search for records under the FOIA, the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can reasonably be expected to produce the information requested.   The fundamental question is not "whether there might exist any other documents possibly responsive to the requests, but rather whether the search for those documents was adequate."  Steinberg v. United States Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994)(quoting Weisberg v. United States Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).  "The search need only be reasonable; it does not have to be exhaustive."  Miller v. Dep't of State, 779 F.2d 1378, 1383 (8th Cir. 1985)(citations omitted).

In order to demonstrate that appropriate efforts were made to locate responsive documents, the agency must provide affidavits or declarations outlining its efforts to locate the records. Judicial Watch, Inc. v. Rossotti, 2002 WL 31962775 (D.Md.); Knight v. Food and Drug Admin., 938 F.Supp. 710 (D.Kan. 1996).  In doing so, the agency must set forth sufficient information in its affidavits for the court to determine if the search was adequate.  Any affidavits or declarations must establish that the agency has conducted a thorough search under FOIA.  The affidavits or declarations must be reasonably detailed and aver all files likely to contain responsive materials, if

16

such records exist, were searched.

While the initial burden rests with the agency to demonstrate the adequacy of the search, once that obligation is satisfied, the agency's position can be rebutted only by a showing that the agency's search was not made in good faith.  Maynard v. CIA, 986 F.2d 547, 560 (1st Cir. 1993)(citing Miller, 779 F.2d at 1383).

With respect to the adequacy of the searches relating to the plaintiff's requests, the defendants' materials provide that in response to the plaintiff's FOIA Request Number 2001-3970, (i.e., Issue A: 1), this file was archived by FCI Otisville, recently found, and responsive records have been forwarded to the plaintiff.  (Doc. No. 23, Ex. A).

With regard to FOIA Request Numbers 2002-8306, 2002-9124, and 2003-2756, (i.e., Issue A: 2), these are records from the plaintiff's prior CCCA New Law incarceration file that was archived by FPC Allenwood staff.   In responding to the plaintiff's complaint, BOP legal staff conducted additional searches for this file.  FPC Allenwood records indicate that a request was sent to the National Archives to have the file sent to FMC Devens, and that the file was sent from the National Archives to FMC Devens in December 2001.  Mail log records from FMC Devens indicate, however, that the file was never received.  Each time a request has been made for records relating to this file, staff at FMC Devens attempted to locate the file, but were unsuccessful. (Doc. No. 23, Ex. B).

The National Archives was contacted and they conducted a search for plaintiff's prior CCCA New Law file that was originally archived by FPC Allenwood staff.  On July 31, 2003, they completed their search and determined that the file is not located at the National Archives Center.  (Doc. No. 23, Ex. A).

Moreover, FCI Schuylkill staff, where the plaintiff is presently incarcerated, were contacted and conducted a search for the prior CCCA New Law file, in case the records were inadvertently sent to FCI Schuylkill and incorporated into the plaintiff's current CCCA New Law file.  The records were not found.  (Id.).

The plaintiff also claims that the BOP's searches were not adequate regarding FOIA Request Numbers 2002-4362 and 2002-6182, (i.e., Issue B). With respect to FOIA Request Number 2002-4362, the defendants' materials provide that the plaintiff sought various records which are or may be maintained in his BOP file.  The plaintiff was provided with 153 pages of records that were responsive to his request.  The plaintiff subsequently submitted another request, FOIA Request Number 2002-6182, in which he requested six specific documents.  The first item was an "EMS-409" relating to his disciplinary transfer.  Since the plaintiff was not a disciplinary transfer from FMC Devens to FCI Schuylkill, no records exist responsive to this request.  (Doc. No. 23, Ex. A, ¶ 15).

The second item was a copy of his CIM Clearance & Separation Data.

18

In response, the plaintiff was provided with a redacted document that reflects that he has no CIM assignment.  (Id. at ¶ 16).

In the third, fourth and fifth items, the plaintiff requested "BOP-402" prepared by Mr. Duby at FMC Devens on or about May 23, 2001, and the material confiscated by SOS Duby and logbook entries regarding the confiscation.  The defendants' materials provide that copies of the plaintiff's confiscation form and confiscation logbook were provided to the plaintiff on August 12, 2003.  (Id. at ¶ 14).  Therefore, the plaintiff has received all records found responsive to this request.

In the sixth item, the plaintiff requested a copy of the SHU review and "log sheets" pertaining to the plaintiff from May 17, 2001, through June 21, 2001.  In response, the plaintiff was advised to seek local review of his Central File.   In addition, FMC Devens staff have conducted multiple searches regarding the "log sheets," but have found no documents in the BOP's system identified as "log sheets."   Staff have, however, conducted a review of the SHU logbooks for any entries that may have been written in the SHU logbook for the time frame relating to his request.  The searches found no records responsive to the plaintiff's request.   Moreover, staff at FCI Schuylkill conducted a search of the plaintiff's current CCCA New Law file for SHU reviews for the relevant time period, but found no records responsive to the plaintiff's request.  (Id. at ¶¶ 17-18).

Based upon the above, the defendants' materials establish that the BOP

has responded to each of the plaintiff's requests and conducted adequate searches for all records requested.  In response, the plaintiff has provided nothing to establish that the searches of the BOP were not in good faith.  As such, the defendants' motion for summary judgment should be granted with respect to the plaintiff's claims against the BOP.

With respect to the EOUSA, the plaintiff alleges:

> 12.  On January 26, 2001, the defendant Executive Office for United States Attorneys (EOUSA) acknowledged plaintiff's FOIA/PA request for disclosure of file memorandums that pertain to a request by the United States Attorney for the District of Massachusetts to the credit bureau "Experian" on September 10, 1999 for a copy of plaintiff's credit report.  This request was subsequently amended to further seek any file memorandums that pertained to a second credit report which was issued on April 30, 2002.

> 13.  Over two years after making the initial request (and despite numerous inquiries) the EOUSA responded to plaintiff in a letter dated March 19, 2003.  EOUSA estimated that the District of Massachusetts would require 80 hours of search time to review 47 boexes (sic) of records to locate the records sought and an advance payment of $2,240.00 would be necessary.

> 14.  On March 31, 2003 plaintiff issued a payment of $560.00 to cover 20 hours of search time and informed defendant EOUSA that the search for the limited records sought should not involve a search of 47 boxes of records in that there are two specific dates and a highly focused search.  In view of the focused and date specific nature of this request for disclosure, the excessive time since this FOIA/PA request was filed and administratively appealed constitute exhaustion of the administrative process.

(Doc. No. 1, p. 4).

In response to the plaintiff's complaint, the defendants' materials provide that on January 8, 2001, the EOUSA received a letter dated December 29, 2000, from the plaintiff, which sought a consumer credit report from Experian dated September 10, 1999, and documents related to its acquisition thought to be maintained under the FOIA/PA by the United States Attorneys Office for the District of Massachusetts.  (Doc. No. 23, Ex. E, ¶ 6).

By letter dated January 26, 2001, the EOUSA acknowledged that the plaintiff's letter had been received and assigned FOIA Number 01-295. However, the EOUSA also notified the plaintiff that his request was defective because he had failed to certify his identity.  The plaintiff was notified that if he did not cure the defect within thirty (30) days, the EOUSA would close the request file.  (Id. at ¶ 7).  On or about February 2, 2001, the EOUSA received the certification of identity from the plaintiff.  (Id. at ¶ 8).

Subsequently, on February 15, 2002, the EOUSA received a letter from the plaintiff dated November 6, 2001,  which summarized all correspondence with the EOUSA to date and restated the subject matter of the plaintiff's request.  (Id. at ¶ 9).  By letter dated February 19, 2002, the EOUSA acknowledged receipt of the plaintiff's correspondence and advised him that delays were being incurred due to the anthrax exposure at the Department of Justice mailing center.  (Id. at ¶ 10).

In correspondence dated April 9, 2002, and October 8, 2002, the plaintiff

expressed frustration over the delay in responding to his request and, in addition, amended his original request to include "any material and/or documentation that relates to an additional access to my consumer credit file by the U.S. Attorneys Office for the District of Massachusetts on or about April 30, 2002.  That access was made to Experian."  (Id. at ¶ 11).

In relation to the search for the records responsive to the plaintiff's request, the EOUSA was advised that there were forty-seven (47) boxes comprising the materials to be searched through, based upon which, the USAO estimated that it would take eighty (80) hours.  As a result, the EOUSA notified the plaintiff by correspondence dated March 19, 2003, that an advanced fee of $2,240.00 would be required before commencement of the search.  The plaintiff was advised that he could narrow the scope of his request and possibly reduce the estimated costs to himself.  The plaintiff was given thirty (30) days to either submit the fee or narrow his request.  (Id. at ¶ 12).

On April 7, 2003, the EOUSA received a payment of $560.00 from the plaintiff, who indicated that the "request was limited solely to the requests made in 9/99 and 4/02 for a copy of my credit report from Experian," and enclosed Experian "notations."  (Id. at ¶ 13).

By correspondence dated September 4, 2003, the EOUSA notified the plaintiff that all forty-seven (47) boxes of materials were searched, but nothing was found responsive to his request.  Upon further inquiry, the EOUSA was

notified that there had been credit reports run on April 30, 2002, and September 10, 1999, but that as per the Financial Litigation Unit's, ("FLU"), policy, these had been shredded shortly after they had been obtained and evaluated.  The plaintiff was advised that this effort had taken eighteen (18) hours, which less the two free hours billed at $28.00 per hour, was assessed at $448.00.  Because the plaintiff had submitted $560.00, he was due a refund of $112.00, presuming that no further efforts were made with respect to the request.  (Id. at ¶ 14).

With respect to the EOUSA's search for the plaintiff's records, the defendants' materials provide that, upon receipt of the plaintiff's request, a search to determine the location of any and all files relating to him and his criminal case or related civil matters was undertaken.  The USAO/DMA conducted a systematic search for records.  The computer case tracking system "LIONS" was used to determine all possible locations of responsive files.  The database has fields for retrieval of information based on an individual's name, USAO file jacket number, and district court case number.  After completing the computer search to determine all possible record locations in the criminal and/or civil divisions, the FOIA contact for the USAO e-mailed all criminal and civil Assistance United States Attorneys regarding the credit reports, and was advised that no one had such records.  In all, forty-seven (47) boxes of documents were located and researched for the requested records.  In addition, the USAO FLU maintained a file on the

plaintiff concerning the payment of restitution, and after searching this file, advised that there were no responsive records located.  Upon further inquiry, the EOUSA was advised that the records pertaining to the credit reports had been destroyed per USAM 3-9.230 and the Boston FLU policy of destroying financial records after determination that the information provided was of little value to the goal of enforcing a fine or restitution order.  (Id. at ¶ 15).

Considering the above, the defendants' materials establish that the EOUSA has fully complied with the requirements of the FOIA as set forth above, and the defendants' motion for summary judgment should be granted with respect to this defendant.

On the basis of the foregoing,

**IT IS RECOMMENDED THAT:**

the defendants' motion for summary judgment, **(Doc. No. 20)**, be **GRANTED**.


<u>s/ Malachy E. Mannion</u>
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Date:  February 11, 2005**

O:\shared\REPORTS\2003 Reports\03-0651